U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2011 JAN -5  AM 10: 58

BY _____ CLERK
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
## FOR THE
## DISTRICT OF VERMONT

McGRX, Inc. d/b/a McGREGOR'S      )
MEDICINE ON TIME,                )
                                 )
                Plaintiff,       )
                                 )
        v.                       )      Case No. 5:10-cv-1
                                 )
THE STATE OF VERMONT,            )
OFFICE OF VERMONT HEALTH         )
ACCESS, JAMES H. DOUGLAS,        )
Governor of the State of Vermont, )
ROBERT HOFMANN, Secretary of the )
Agency of Human Services, SUSAN  )
BESIO, Director of the Office of )
Vermont Health Access, and       )
CYNTHIA D. LaWARE,               )
                                 )
                Defendants.      )

**OPINION AND ORDER GRANTING DEFENDANTS' REQUEST FOR
JUDICIAL NOTICE, GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS, GRANTING DEFENDANTS' MOTION
FOR *YOUNGER* ABSTENTION, AND DENYING PLAINTIFF'S MOTION FOR
LEAVE TO AMEND SECOND AMENDED COMPLAINT**
(Docs. 11, 14, 24, 34 & 36)

This matter came before the court on July 8, 2010 for oral argument on all pending
motions. Post-hearing, Plaintiff, McGRX, Inc. d/b/a McGregor's Medicine On Time,
amended its complaint for a second time. The parties completed their post-hearing
briefing on November 12, 2010.

Plaintiff is represented by Matthew B. Byrne, Esq. and Robert F. O'Neill, Esq.
Defendants, the State of Vermont, the Office of Vermont Health Access ("OVHA"),
James H. Douglas, Governor of the State of Vermont, Robert Hofmann, Secretary of the
Agency of Human Services, Susan Besio, Director of OVHA, and Cynthia D. LaWare

(collectively, "Defendants"), are represented by Assistant Vermont Attorney General Bridget C. Asay.

Plaintiff's Second Amended Complaint arises out of a change made to Vermont's State Medicaid Plan governing the dispensing of certain maintenance drugs to Medicaid recipients. The amendment altered the dispensing schedule to a 90 day medication supply, except when a physician obtains approval for a shorter dispensing schedule (the "Regulation"). Plaintiff alleges that its own multi-dose medication dispensing system, which permits a shorter dispensing schedule, is medically necessary for certain Medicaid recipient customers whose disabilities hinder their ability to comply with their medication therapy regimes under the Regulation. Plaintiff asserts that both its own and its customers' rights have been violated as a result of the Regulation. On this basis, Plaintiff asserts an array of federal and state claims on its own behalf and on behalf of its Medicaid recipient customers with whom it contends it has a close relationship.

Pursuant to Fed. R. Civ. P. 12(b)(1) and (6), Defendants request dismissal of Plaintiff's Second Amended Complaint for lack of standing and failure to state a claim.[1] Defendants further seek dismissal on *Younger* abstention grounds. Defendants seek dismissal on sovereign immunity grounds of the claims set forth in Counts III-IV insofar as they pertain to the State of Vermont and OVHA. They also assert, for preservation purposes, a sovereign immunity claim with regard to Counts I and II. Plaintiff opposes dismissal.

---

[1] Prior to adjudicating their motion to dismiss, Defendants request the court to take judicial notice of the decision of the federal Centers for Medicare and Medicaid Services ("CMS") approving an amendment to Vermont's State Medicaid Plan that sets forth the 90 day dispensing requirement. (Doc. 24.) Pursuant to Fed. R. Evid. 201, Defendants' request for judicial notice is GRANTED. *See Int'l Bhd. of Teamsters v. Zantop Air Transp. Corp.,* 394 F.2d 36, 40 (6th Cir. 1968) ("Many cases have recognized that a Court may take judicial notice of the rules, regulations and orders of administrative agencies issued pursuant to their delegated authority."); *Rosario v. Sterling Entm't, LLC,* 2009 WL 1683351, at *2 (S.D.N.Y. June 16, 2009) (court may take judicial notice of governmental agency determinations).

2

## I.    Factual and Procedural Background.

Plaintiff is a Vermont corporation that operates as a "closed door, long-term care pharmacy." (Doc. 33 ¶ 4.)[2] Plaintiff alleges that it is "a family run business that does not have maximizing profits as its chief goal." (Doc. 33 ¶ 42.)  It provides pharmacy services to, among others, Medicaid recipients with special needs that require a higher level of medication therapy management.  Although Plaintiff does not operate as a non-profit and financially benefits from a more frequent dispensing schedule, it alleges that it often puts its customers' interests ahead of its own profits and does not always collect co-payments from them.

Plaintiff works with Vermont doctors to provide multi-dose packaging for medications which are dispensed in less than 90 day increments.  Plaintiff's multi-dose package system sorts drugs into individually sealed packages by day and time of day. Plaintiff alleges that this system assists disabled customers, especially those with multiple medical conditions which require multiple medications to treat, to adhere to a medication therapy regimen.  In order to use Plaintiff's multi-dose system, a doctor must state in writing that the use of Plaintiff's system is medically necessary.

Plaintiff alleges that for many disabled persons, "receiving a 90-day supply of medications is the same as receiving no medications at all, because their disabilities

---

[2] The facts include certain admissions made by the parties at the court's hearing, as well as the allegations set forth in the Second Amended Complaint, "which are assumed to be true for purposes of adjudicating Defendants['] motion to dismiss." *Kuck v. Danaher*, 600 F.3d 159, 162 n.2 (2d Cir. 2010); *see also Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (in ruling on a motion to dismiss, "[t]he court accepts all well-pleaded allegations in the complaint as true, drawing all reasonable inferences in the plaintiff's favor."). However, "argumentative inferences favorable to the party asserting jurisdiction should not be drawn." *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992). And "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to [defeat] a motion to dismiss." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398 (2d Cir. 2006) (internal quotations marks and citation omitted).

prevent them from sorting medication by the day and the time of day that they should take the medication." (Doc. 33 ¶ 17.) Without Plaintiff's multi-dose system, Plaintiff alleges that some of its disabled customers may "wind up in institutions," have "increased encounters with law enforcement officials, including arrest and incarceration," and suffer "hospitalization, emergency room visits, re-entry into drug and alcohol treatment centers, and doctors visits." (Doc. 33 ¶¶ 17, 19.) While acknowledging that the Regulation permits physicians to dictate a shorter dispensing period, Plaintiff alleges that the need for physician approval, which Plaintiff describes as a "prior authorization," "creates additional burdens for the disabled rather than make[s] an affirmative accommodation." (Doc. 33 ¶ 31.)

Defendant OVHA administers Vermont's Medicaid Program. The Regulation, as amended and approved provides, in relevant part, that:

> A pharmacist must fill prescriptions in quantities of between 30 and 90 days supply for all drugs prescribed for continued regular use. The physician may prescribe for particular patients or conditions in lesser amounts and in these instances the pharmacist is required to fill as directed. Effective July 15, 2009, when OVHA is the primary payer, pharmacies will be required to dispense designated classes of maintenance drugs in 90-day supplies after the first fill. The first fill allows prescribers to test for therapeutic effectiveness and patient tolerance.

(Doc. 24-6 at 4.) Physicians, not pharmacists, decide when a more frequent dispensing schedule is medically necessary, as was made clear in CMS's approval process:

- **Please clarify how the pharmacist will determine the particular patients or conditions for which these requirements will not apply.**

> *Pharmacists do not determine which individuals fall under this requirement, prescribers do. Like other drugs, it is up to the prescriber to request a prior authorization, or exception, in this case. There is a list of the specific drugs that fall under this process on OVHA's web site. Both prescribers and pharmacists were given the option before this process went into effect to request a list of individuals affected by the change, in order to make the transition go smoothly. At this time, like with any other PA for a drug, if the prescriber has submitted and had the PA request approved, the pharmacy claim will go through with no problems. If the prescriber has*

4

> *not requested a PA/Exception, then they contact the prescriber for them to*
> *submit the PA/Exception. The pharmacy also has the option of calling the*
> *Pharmacy Benefits Manager to inquire if a PA/Exception was requested.*

(Doc. 24-3 at 3.)  The Regulation thus allows prescribers to request a more frequent

dispensing schedule for Medicaid beneficiaries for whom it is medically necessary, and

authorizes pharmacists to implement that request at a physician's direction.

Plaintiff alleges that prior to amending the Regulation, OVHA provided no

opportunity for public comment, did not provide meaningful notice to beneficiaries of the

"prior authorization" process,[3] and did not inform beneficiaries of their alleged right to a

pre-termination evidentiary hearing.  Somewhat contradictorily, Plaintiff also alleges that

it "actively advocated for the rights of the disabled and against the implementation of the

90 day rule . . . in writing and in person[,]" (Doc. 33 ¶ 47) and that, as a consequence,

Plaintiff was investigated by the State, causing it to suffer and to continue to suffer

reputational and other damages.

The Second Amended Complaint asserts the following causes of action:  Count I:

Violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131;

Count II:  Violation of the Rehabilitation Act  ("RA"), 29 U.S.C. § 794; Count III:

Violation of the Due Process Clause of the United States Constitution; Count IV:

Violation of 42 U.S.C. § 1983 and the Supremacy Clause of the United States

Constitution; Count V: Violation of Vermont's Administrative Procedure Act, 3 V.S.A.

§§ 801-849; and Count VI:  Declaratory Judgment.

---

[3] Defendants assert that Plaintiff's allegations that there was no public comment period and no
notice of the "prior authorization" requirement are false.  They further contend that Vermont
doctors, acting through the Vermont Medical Society, participated in the drafting of the
Regulation and that Medicaid beneficiaries were provided with notice of the amendments to the
Regulation, including the "prior authorization" provision.  A document attached to the Second
Amended Complaint strongly suggests that Plaintiff, itself, participated in the public comment
period regarding the Regulation. *See* Doc. 33-3 at 1 (letter dated 8/24/09 from Plaintiff's counsel
to OVHA, stating, *inter alia*,"[w]e appreciate the opportunity to comment on the proposed rule
found in Bulletin No. 09-17.  McGregor's Medicine on Time . . . appeared at the Public Hearing
on the rule and raised many policy based reasons why the rule should not be adopted.").

Presently pending in Vermont state court is the State of Vermont's civil enforcement proceeding against Plaintiff and Audrey McGregor Reardon for alleged violations of Vermont's Medicaid program, styled *State of Vermont v. McGrx, Inc., d/b/a McGregor's Medicine-On-Time Pharmacy, and Audrey McGregor Reardon*, No. 227-3-10 Wncv (the "state civil enforcement action"). The state civil enforcement action was filed in Washington Superior Court on March 31, 2010, removed to this court on April 19, 2010 (Doc. 1 in 5:10-cv-95), and remanded to state court on September 16, 2010 (Doc. 15 in 5:10-cv-95).

## II. Defendants' Motion to Dismiss.

Defendants seek dismissal of each count of the Second Amended Complaint. With regard to Plaintiff's ADA, RA, and Due Process claims, the thrust of Defendants' motion is that that Plaintiff lacks standing to bring these claims on its own behalf or on behalf of its Medicaid recipient customers, and that even if standing may be found, Plaintiff fails to state a claim.

### A. Counts I & II: Plaintiff's Own ADA and RA Claims.

The ADA was enacted to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities[.]" 42 U.S.C. § 12101(b)(1) (2000). Here, Plaintiff relies upon the anti-discrimination provision of Title II of the ADA, which provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Plaintiff's RA claims rely on Section 504 of the RA which provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . ." 29 U.S.C. § 794(a). For purposes of the motion to dismiss, Plaintiff's ADA and RA claims may be addressed as a single claim. *See Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003) ("[U]nless one of [the]

6

subtle distinctions is pertinent to a particular case, we treat claims under the two statutes identically.").

The Second Circuit has held that prudential standing requirements do not apply to ADA and RA claims:

> ADA and Rehabilitation Act actions are not subject to any of the prudential limitations on standing that apply in other contexts. *See Innovative Health Sys., Inc. v. City of White Plains*, 117 F.3d 37, 47 (2d Cir. 1997) (concluding that standing under these statutes should be defined as broadly as constitutionally permitted), *overruled on other grounds by Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 171 n.7 (2d Cir. 2001).

*Fulton v. Goord*, 591 F.3d 37, 42 (2d Cir. 2009). Accordingly, with regard to its own ADA and RA claims, Plaintiff need only establish standing under Article III of the U.S. Constitution. *See Leibovitz v. New York City Transit Auth.*, 252 F.3d 179, 184 (2d Cir. 2001) (opining that constitutional standing "is the threshold question in every federal case, determining the power of the court to entertain the suit") (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). The "irreducible constitutional minimum of standing," rooted in Article III's case-or-controversy requirement, consists of three elements:

> (1) an "injury in fact," by which is meant "an invasion of a legally protected interest"; (2) "a causal connection between the injury and the conduct complained of"; and (3) a likelihood that "the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed.2d 351 (1992) (internal quotation marks omitted**).**

*Fulton*, 591 F.3d at 41.

Article III standing "often turns on the nature and source of the claim asserted," and the legally protected interest "may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." *Warth*, 422 U.S. at 500 (internal quotation marks omitted). The Second Circuit has concluded that "economic injuries that are fairly traceable to [defendant's] violations of the [statute at issue]," where the plaintiff "seeks financial compensation to redress those losses," meet Article III standing requirements. *Official Comm. of Unsecured Creditors of WorldCom, Inc. v. SEC*, 467

F.3d 73, 77 (2d Cir. 2006) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)).

With regard to its own claims, Plaintiff asserts that the Regulation causes it an economic injury in the form of fewer dispensing fees, more paperwork costs, and fewer participants in its multi-dose program,[4] which injuries are fairly traceable to the actions of at least some of the Defendants in amending the Regulation. If it is determined that the Regulation unlawfully discriminates against the disabled, Plaintiff's economic injuries are likely to be redressed by the Regulation's invalidation. Construing Plaintiff's claim liberally, and giving it the benefit of all favorable inferences that can be drawn from the alleged facts, the court concludes that Plaintiff has alleged an injury that is fairly traceable to the Defendants' amendment of the Regulation. *See Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004). Plaintiff must next cross the threshold of stating a claim.

As the factual and legal basis for its own ADA and RA claims, Plaintiff asserts that it has been and will continue to be the victim of associational discrimination. "[A] cause of action based on ADA associational discrimination permits a plaintiff to bring suit on its own behalf *for injury it itself suffers* because of its association with an ADA-protected third party." *A Helping Hand, LLC v. Baltimore Cnty., Md.*, 515 F.3d 356, 363 n.3 (4th Cir. 2008). Plaintiff asserts that, in 2006, it sent letters to and had a meeting with OVHA, advocating for chronically ill and impoverished customers and asking OVHA to amend its co-payment policies. In 2009, Plaintiff alleges that it advocated for the rights of the disabled and against the implementation of the Regulation, both in writing and in person. As a consequence of that advocacy, Plaintiff alleges that it was the victim of retaliation as "the State of Vermont launched an investigation into McGregor's. That investigation has caused significant damage to the on-going operations of McGregor's." (Doc. 27-1 ¶ 56.)

---

[4] "The ADA provides 'remedies, procedures, and rights . . . to any person alleging discrimination on the basis of disability in violation of section 12132,' 42 U.S.C. § 12133, and the Rehabilitation Act does the same for 'any person aggrieved' by disability-based discrimination, 29 U.S.C. § 794a(a)(2)." *Fulton v. Goord*, 591 F.3d 37, 42 (2d Cir. 2009).

In *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268 (2d Cir. 2009), the Second Circuit recognized a claim for associational discrimination under the RA where the minor children of a deaf, hospitalized parent suffered injuries because the defendant hospital failed to provide a sign language interpreter for their parent. *Id.* at 281. The children, who were forced to serve as sign language interpreters for their disabled parent, were exposed to their parent's serious health condition and were forced to miss school and thus were "unnecessarily placed at risk for emotional trauma because of their young age." *Id.* Tracking the text of the RA, the court held that the children themselves need not suffer discrimination in any program or activity receiving federal financial assistance, in order to find that they were "persons aggrieved." *Id.* at 280-82. Rather, they "need only establish that each suffered an injury independent from their parents that was causally related to the Hospital's failure to provide services to their parents." *Id.* at 280; *see also MX Group, Inc. v. City of Covington*, 293 F.3d 326, 335 (6th Cir. 2002) (holding that drug treatment provider had standing to sue on its own behalf, without joining individual clients as plaintiffs, based on "injury it suffered as a result of its association with individuals with disabilities"); *Innovative Health Sys., Inc. v. City of White Plains*, 931 F. Supp. 222, 236 (S.D.N.Y. 1996) (opining that ADA statute extending relief to "'[a]ny person alleging discrimination . . .' need not be an individual with a disability, but may be anyone injured by a covered entity's discrimination against an individual on the basis of that individual's disability.").

Where, as here, the claim of associational discrimination is based upon advocacy, however, "generalized references to association with disabled persons or to advocacy for a group of disabled persons are not sufficient to state a claim for associational discrimination under the ADA." *Freilich v. Upper Chesapeake Health, Inc.*, 313 F.3d 205, 216 (4th Cir. 2002) (rejecting claim by physician that her advocacy on behalf of dialysis patients stated an ADA associational discrimination claim); *see also Oliveras-Sifre v. Puerto Rico Dep't of Health*, 214 F.3d 23, 26 (1st Cir. 2000) (concluding that plaintiffs who claimed injuries because of their advocacy on behalf of individuals with

9

AIDS failed to state a claim for associational discrimination); *Sergeant v. Little Rock Sch. Dist.*, 2010 WL 3199702, at *4 (E.D. Ark. Aug. 12, 2010) (holding that even though plaintiff identified disabled students on whose behalf she advocated, "she does not allege the kind of relationship or association that is protected under the ADA."); *Valenti v. Massapequa Union Free Sch. Dist.*, 2006 WL 2570871, at *14 (E.D.N.Y. Sept. 5, 2006) ("[T]here is no support for the proposition that associational discrimination claims can be brought when someone is 'advocating' on behalf of the disabled.").

Because Plaintiff's generalized allegations of advocacy on behalf of disabled Medicaid recipients fail to state a claim for associational discrimination under the ADA and RA, and because Plaintiff has not otherwise established a violation of its own legally protected interests under the ADA and RA, Plaintiff's own discrimination claims must be dismissed. Accordingly, Defendants' motion to dismiss Counts I and II of the Second Amended Complaint insofar as those counts assert Plaintiff's own claims under the ADA and RA is GRANTED.

### B.   Counts I & II:  Plaintiff's Third Party ADA & RA Claims.

As noted previously, Plaintiff's ADA and RA claims are not subject to prudential standing limits based upon Second Circuit precedent. *See Fulton*, 591 F.3d at 42. Defendants nevertheless assert that Plaintiff has failed to state a claim on behalf of its third party Medicaid recipient customers because it has not identified a single instance in which Defendants have discriminated against the disabled. For example, Plaintiff does not identify any customer who has gone without medication, who has been impeded in receiving medication, or who has been actually threatened with non-receipt of medication as a result of the Regulation. Indeed, with regard to the three patients identified in the Second Amended Complaint, none is alleged to receive medication in 90 day increments as a result of the Regulation, nor does Plaintiff allege than any of these individuals sought and were denied a shorter dispensing period, or that anything about their medication therapy regimes changed as a result of the Regulation. Plaintiff's speculation as to *what might occur* to certain unidentified customers fails to state a claim of discrimination

10

under the ADA and RA. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level").

Moreover, as Defendants correctly point out, each of Plaintiff's third party ADA and RA claims is based upon a draft of the Regulation which was never approved and never imposed. Accordingly, there can be no rational claim that a mere draft of the Regulation interfered with the interests protected under the ADA and RA, that the court should enjoin Defendants from implementing the draft, or that the court should declare the draft Regulation invalid. *See Eustace v. Comm'r*, 312 F.3d 905, 908 (7th Cir. Judicial Council 2002) (refusing to grant judicial review of proposed regulation as it has no legal effect); *Jordan v. Vermont*, 166 Vt. 509, 513, 702 A.2d 58, 61 (1997) (trial court has jurisdiction only to review final orders of state agencies).

Finally, Defendants argue that Plaintiff's third party discrimination claims lack even a modicum of plausibility as the Regulation clearly and undisputedly would allow Medicaid recipient customers for whom it is medically necessary to continue to receive medications in less than 90 day increments. Because it has always been a physician and not a pharmacist who determines what is medically necessary, the requirement of what Plaintiff calls a "prior authorization" imposes no meaningful additional burdens. The court need not address the issue of plausibility because it finds that the Second Amended Complaint fails to plead facts sufficient to establish the essential elements of a third party ADA and RA claim and, on that basis alone, dismissal is required. *See Rutigliano v. City of New York*, 326 F. App'x 5, 8-9 (2d Cir. 2009) (dismissing complaint for failure to plead facts that would satisfy the essential elements of a claim).

For the foregoing reasons, pursuant to Fed. R. Civ. P. 12(b)(6), the court hereby DISMISSES COUNTS I and II's third party ADA and RA claims for failure to state a claim.

11

## C. Count III: Plaintiff's Third Party Due Process Claims.

Plaintiff's third party Due Process claims address the manner in which the Regulation was adopted. Plaintiff alleges that its Medicaid recipient customers' rights were violated in the process, as they were deprived of meaningful notice, a meaningful opportunity to be heard, and a pre-termination evidentiary hearing. Plaintiff further alleges that "the Vermont system for appealing decisions by administrative agencies violates the Due Process Clause because it provides no avenue for judicial review." (Doc. 33 ¶ 68.)

Plaintiff claims no invasion of a legally protected interest of its own as a result of the adoption of the Regulation. Plaintiff must therefore establish it has standing to bring Due Process claims on behalf of its Medicaid recipient customers. *See Warth*, 422 U.S. at 518 ("It is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers."); *see also Baur v. Veneman*, 352 F.3d 625, 642 n.15 (2d Cir. 2003) (holding that a plaintiff "must demonstrate standing for each claim and form of relief sought."). In addition to Article III's requirements for standing, Plaintiffs must satisfy prudential standing requirements. *See Kowalski v. Tesmer*, 543 U.S. 125, 128-29 (2004) ("The doctrine of standing asks whether a litigant is entitled to have a federal court resolve his grievance. This inquiry involves 'both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise.'") (quoting *Warth*, 422 U.S. at 498).

Plaintiff alleges that it has a close relationship with its Medicaid recipient customers and that it can be expected to represent their interests with zeal in this lawsuit. It further claims that its customers face obstacles to asserting their own rights because many of them are developmentally disabled, indigent, or face stigma from having their private medical decisions "become the fodder for public debate." (Doc. 33 ¶ 54.)

"The Supreme Court has held that 'prudential standing encompasses the general prohibition on a litigant's raising another person's legal rights . . . '" *Selevan v. N.Y.*

*Thruway Auth.*, 584 F.3d 82, 91 (2d Cir. 2009) (quoting *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004)); *see also Campbell v. Louisiana*, 523 U.S. 392, 397 (1998) (noting "general reluctance to permit a litigant to assert the rights of a third party"). Accordingly, in *Center for Reproductive Law & Policy v. Bush*, 304 F.3d 183 (2d Cir. 2002), the Second Circuit rejected a claim of standing where, as here, a plaintiff sought to assert a Due Process violation on another's behalf:

> As plaintiffs do not assert a harm to their own interest in receiving due process of law, this is precisely the sort of claim that the prudential standing doctrine is designed to foreclose. Plaintiffs cannot make their [constitutional] claims actionable merely by attaching them to a third party's due process interests.

*Id.* at 196. In so ruling, the Second Circuit cited with approval *Haitian Refugee Ctr. v. Gracey*, 809 F.2d 794 (D.C. Cir. 1987), wherein the court opined:

> Third party standing therefore is appropriate only when the third party's rights protect that party's relationship with the litigant. Thus, a litigant may not be given third party standing to assert constitutional rights of third parties that do not protect a relationship, such as procedural due process rights. A litigant therefore could never have standing to challenge a statute solely on the ground that it failed to provide due process to third parties not before the court.

*Id.* at 809.

Plaintiff argues that *Bush* and *Gracey* "do not state a categorical rule" (Doc. 15 at 10 n.5), and that any such rule would contravene settled Supreme Court precedent in *Griswold v. Connecticut*, 381 U.S. 479 (1965). However, in *Griswold*, the plaintiffs had been arrested and found guilty of aiding and abetting the violation of a statute regulating information about contraception. Although the Court concluded that plaintiffs had "standing to raise the constitutional rights of the married people with whom they had a professional relationship," it recognized that plaintiffs, charged as accessories, also had their own interests at stake and "should have standing to assert that the offense which [they are] charged with assisting is not, or cannot constitutionally be a crime." *Id.* at 481.

Post-*Griswold*, although the Supreme Court has "not looked favorably upon third-party standing," it has allowed it in "certain circumstances" when "'enforcement of

the challenged restriction *against the litigant* would result indirectly in the violation of third parties' rights.'" *Kowalski*, 543 U.S. at 130 (quoting *Warth*, 499 U.S. at 510). Even in those circumstances, a party claiming third-party standing must generally satisfy a two-pronged test: "First, we have asked whether the party asserting the right has a 'close' relationship with the person who possesses the right. Second, we have considered whether there is a 'hindrance' to the possessor's ability to protect his own interests." *Id.* (citations omitted).

Defendants argue that Plaintiff cannot satisfy this two-pronged test as Plaintiff's interests are opposed to those of its Medicaid recipient customers because Plaintiff reaps a direct financial benefit from more frequent dispensing periods in the form of additional dispensing fees while its customers bear the financial burden of this practice in the form of more frequent co-payments. *Cf. Craig v. Boren*, 429 U.S. 190, 195-97 (1976) (finding beer vendors could assert third party standing on behalf of their customers as they shared a complete identity of interests with their customers in the purchase and sale of 3.2% beer). In addition, increased dispensing fees may negatively impact the Medicaid benefits that are available to Plaintiff's customers by increasing the costs of the Medicaid program. Accordingly, Defendants argue that because Plaintiff's own financial interests are adverse to those of its Medicaid recipient customers, Plaintiff is ill-suited to represent those customers' interests with zeal. *See Sec'y of State of Md. v. Joseph H. Munson Co., Inc.*, 467 U.S. 947, 956 (1984) (The "close relationship" requirement asks whether "the third party can reasonably be expected properly to frame the issues and present them with the necessary adversarial zeal.").

Plaintiff responds by pointing to the Second Amended Complaint's allegations that Plaintiff often puts the needs of its customers before its own, is not primarily motivated by the desire to make a profit, and waives co-payments for many of its customers. Not only are these allegations self-serving and conclusory, they must be balanced against Plaintiff's admitted for-profit status and Plaintiff's acknowledgement that it financially benefits, at the financial expense of its customers, from a more frequent

14

dispensing schedule. Because Plaintiff has failed to establish a sufficient identity of interests with its Medicaid recipient customers, and because Plaintiff's interests are in certain respects opposed to those of its customers, Plaintiff cannot be expected to represent its customers' interests with the necessary adversarial zeal.

Plaintiff is also unable to demonstrate that it has a sufficiently "close relationship" with its customers. Plaintiff neither prescribes medications, nor determines how or when they are dispensed. Even before the Regulation was amended, Plaintiff had no authority to alter a dispensing schedule at a customer's request. Although Plaintiff alleges that it works with Vermont doctors, it does not further claim that Vermont doctors defer to Plaintiff's judgment in prescribing medications for their patients. Third party standing generally requires a more direct involvement in the relevant decision-making than is present here. To meet the "close relationship" standard, the relationship must permit the third party "to operate 'fully, or very nearly, as effective a proponent' of their patients' rights as the patients themselves." *Pa. Psychiatric Soc'y v. Green Spring Health Servs., Inc.*, 280 F.3d 278, 289 (3d Cir. 2002) (quoting *Powers v. Ohio*, 499 U.S. 400, 413 (1991)). For these reasons, in the health care field, third party standing for patients has generally been conferred only upon their physicians. *See, e.g., Singleton v. Wulff*, 428 U.S. 106, 115-17 (1976) (plurality opinion) (ruling that physicians are "intimately involved" in their patients' decisions to obtain abortions and thus may litigate their patients' rights to Medicaid payment for that procedure); *Griswold*, 381 U.S. at 481 (physician who faces criminal penalty for dispensing contraception has sufficiently close relationship with patients to whom they are dispensed to litigate their rights); *Aid for Women v. Foulston*, 441 F.3d 1101, 1113 (10th Cir. 2006) (physicians who are required to report any sexual activity of a patient under the age of 16 have a sufficiently close relationship with their patients to challenge that requirement on their minor patients' behalf).

Defendants further argue that there is no evidence that Plaintiff's customers are or were hindered in asserting their own rights in the process through which the Regulation

15

was amended. They point out that a variety of advocacy groups exist in Vermont and that physicians, with whom Medicaid recipients presumably have a "close relationship," participated in the drafting of the Regulation. They further contend that Plaintiff's argument that some of its Medicaid recipient customers may have been hindered from opposing the Regulation because of their mental disabilities is sheer speculation and that nothing in the Second Amended Complaint alleges such hindrance actually occurred.

Courts "cannot simply assume that every disabled or chronically ill person is incapable of asserting his or her own claims." *Freilich*, 313 F.3d at 215. Instead, courts should generally "adhere to the longstanding principle that 'third parties themselves usually will be the best proponents of their own rights.'" *Id.* (quoting *Singleton*, 428 U.S. at 114). Here, Plaintiff fails to establish why it, as opposed to its Medicaid recipient customers, should litigate those customers' procedural due process rights. "[I]t is the burden of the party who seeks an exercise of jurisdiction in his favor . . . clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute." *Thompson v. Cnty. of Franklin*, 15 F.3d 245, 249 (2d Cir. 1994) (internal quotation marks and citation omitted). With regard to its third party Due Process claims, Plaintiff has not shouldered this burden. Accordingly, the court hereby GRANTS Defendants' motion to dismiss Count III of the Second Amended Complaint.

### D. Count IV: Plaintiff's § 1983 and Supremacy Clause Claims.

Count IV of the Second Amended Complaint sets forth a number of claims based upon Plaintiff's overarching allegation that the Regulation, as well as the manner in which it was implemented, violate the Medicaid Act. Defendants argue that Plaintiff's § 1983 and Supremacy Clause claims should be dismissed either for failure to state a claim, or lack of standing based in part on this court's opinion in *Springfield Hosp. v. Hoffman*, 2010 WL 3322716 (D. Vt. Apr. 9, 2010).

#### 1. Plaintiff's Section 1396a(a)(30)(A) & Section 1983 Claim.

Plaintiff alleges that the Regulation violates Section 1396a(a)(30)(A) of the Medicaid Act ("Section 30(A)" or "§ 30(A)") by not providing an equivalent service to

Plaintiff's multi-dose system. It further alleges that, in addition to its Medicaid recipient customers' interests, Plaintiff, itself, has "legally protected interests under the Constitution, the Medicaid Act, and other federal laws (including 42 U.S.C. § 1983) in the full enforcement of the federal Medicaid Act against [the] [R]egulation." (Doc. 33 ¶ 75.)

> Section 30(A) requires a Medicaid state plan to:
>
> provide such methods and procedures relating to the utilization of, and the payment for, care and services available under the plan . . . as may be necessary to safeguard against unnecessary utilization of such care and services and to assure that payments are consistent with efficiency, economy, and quality of care and are sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area.

42 U.S.C. § 1396a(a)(30)(A).

In *Springfield Hospital*, this court held, *inter alia*, that the plaintiff-hospital failed to state a § 1983 claim based on an alleged violation of § 30(A) because the latter statute does not create a private right of action for Medicaid providers. *See Springfield Hosp.* 2010 WL 3322716, at *11. In so ruling, the court relied upon binding Second Circuit precedent in *New York Ass'n of Homes & Servs. for the Aging, Inc. v. DeBuono*, 444 F.3d 147, 148 (2d Cir. 2006), which held that § 30(A) did not create federally enforceable rights under § 1983. Because there is no private cause of action for Medicaid providers under § 30A, Plaintiff has no corresponding § 1983 claim, as 42 U.S.C. § 1983 "does not create a private right of action. It provides a mechanism for recovery where the Constitution or relevant statute gives a citizen a right to an action." *Metropolitan Taxicab Bd. of Trade v. City of New York*, 2008 WL 4866021, at *5 (S.D.N.Y. Oct. 31, 2008). *DeBuono* thus mandates dismissal of Plaintiff's own claims under Section 1983 and Section 30(A) of the Medicaid Act, and Defendants' motion to dismiss those claims is hereby GRANTED.

With regard to a § 1983 claim under Section 30(A) on its Medicaid recipient customers' behalf, Plaintiff must establish that: (1) Section 30(A) creates enforceable rights, privileges, or immunities within the meaning of Section 1983; or (2) Congress has not foreclosed such enforcement of the statute in the enactment itself. *See Concourse Rehab. & Nursing Ctr. Inc. v. Whalen*, 249 F.3d 136, 143 (2d Cir. 2001). However, before the court even reaches this inquiry, Plaintiff must establish that it has Article III standing to raise a third party claim and that granting Plaintiff third party standing satisfies prudential standing requirements. For the same reasons the court found that Plaintiff had not crossed that threshold with its Due Process claims, it reaches the same conclusion here.

Plaintiff itself has no "legally protected interest" in Section 30(A) of the Medicaid Act and has not suffered any "injury in fact." *Fulton*, 591 F.3d at 41. Plaintiff also lacks a "close relationship" with its Medicaid recipient customers, cannot be expected to represent those customers' interests with zeal, and fails to establish that those customers face obstacles in asserting their own claims, if any, under Section 30(A). The court therefore GRANTS Defendants' motion to dismiss Plaintiff's third party claims under § 1983 and § 30(A) as set forth in Count IV of the Second Amended Complaint.

## 2.  Plaintiff's Third Party Claim Under § 1396a(a)(3) & § 1983.

Plaintiff brings a second §1983 claim solely on behalf of its Medicaid recipient customers premised upon its allegation that Defendants have failed to protect the procedural rights of Plaintiff's patients under Section 1396a(a)(3) of the Medicaid Act. Although Plaintiff incorporates by reference its allegations that Defendants provided Medicaid beneficiaries with no meaningful prior notice, no opportunity to be heard, no prior comment period, and no pre-termination evidentiary hearing, Section 1396a(a)(3) does not guarantee any of these rights.

Instead, Section 1396a(a)(3) provides that a State plan for medical assistance must "provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim for medical assistance under the plan is denied or is not acted

upon with reasonable promptness[.]" 42 U.S.C. § 1396a(a)(3). Plaintiff does not allege that any of its Medicaid recipient customers made a claim for medical assistance that was denied or not acted upon with reasonable promptness, nor does it allege that it or one or more of its customers has requested and been denied a hearing before a State agency. In the absence of at least allegations to this effect, Plaintiff has clearly failed to state a claim under either § 1396a(a)(3) or § 1983. *See Zavalidroga v. Cote*, 2010 WL 3894789, at *2 (2d Cir. Oct. 6, 2010) (dismissal of complaint was appropriate because complaint, even when liberally construed, failed to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") (citation omitted); *see also Stern v. Gen. Elec. Co.*, 924 F.2d 472, 476 (2d Cir. 1991) ("As with any complaint, a motion to dismiss must be granted if the pleadings fail adequately to allege the elements of the claim on which the plaintiff's theory of liability is based.").

Because the court hereby DISMISSES Plaintiff's § 1396a(a)(3) and § 1983 claims set forth in Count IV for failure to state a claim, the court need not determine whether there is an enforceable right of action under § 1396a(a)(3) and, if so, whether Plaintiff may bring such a claim on behalf of its Medicaid recipient customers.

### 3. Plaintiff's Supremacy Clause Claims.

Count IV of the Second Amended Complaint asserts Supremacy Clause claims with regard to both Sections 30(A) and Section 1396a(a)(3) of the Medicaid Act, alleging, "[t]he statute [presumably Vermont's Administrative Procedures Act] and [R]egulation violated the Medicaid Act and are preempted by the act." (Doc. 33 ¶ 70.) In particular, Plaintiff alleges that "Defendants have failed to insure that payments made for services rendered to Medicaid recipients are sufficient to ensure efficiency, economy, and quality of care and sufficient enough to enlist enough providers so that care and services are available under the state Medicaid plan at least to the extent that such services are available to the general population." (Doc. 33 ¶ 71.) Beyond generalized statements, however, the Second Amended Complaint provides no guidance as to the

19

nature of the state-federal conflict at issue. Its requests for injunctive and declaratory relief suffers from this same infirmity. (Doc. 33 ¶¶ 76-78.)

Post-hearing, Plaintiff points to paragraph 72 of the Second Amended Complaint as the source of its Supremacy Clause claims. Although not clearly framed as a preemption claim, that paragraph asserts:

> By instituting the 90-day fill rule, OVHA has forced beneficiaries to lose the Medicine on Time service offered by McGregor's. The services that McGregor's provides are available to the general population[ ]. Private insurance companies, both through the Medicare Part D program and employer provided insurance, are billed for each dispensing of medication in a seven day or twenty-eight day program. Thus, the Medicaid rule violates the requirements of 42 U.S.C. § 1396a(a)(30)(A) by not providing for the equivalent service.

(Doc. 33 ¶ 72.) With regard to an alleged conflict between the Regulation and §1396a(a)(3), Plaintiff does not point to a direct conflict but rather claims that "Defendants have failed to protect the procedural rights of McGregor's patients under the Medicaid Act in Section 42 U.S.C. §§ 1983 and 1988." (Doc. 33 ¶ 73.)

The Supremacy Clause provides that the laws of the United States "shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const., art. VI, cl. 2. "[S]tate laws that 'interfere with, or are contrary to,' federal law" must be invalidated. *Hillsborough County, Fla. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 712-13 (1985) (quoting *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 211 (1824)).

As a predicate to pleading a Supremacy Clause claim, a plaintiff seeking declaratory or injunctive relief must at least identify the state law or regulation that interferes with or is contrary to an identified federal law. *See, e.g., Springfield Hosp.*, 2010 WL 3322716, at *14; *see also Equal Access for El Paso, Inc. v. Hawkins*, 562 F.3d 724, 730 (5th Cir. 2009) (dismissing Supremacy Clause and related § 1983 claim as plaintiff "failed to identify any state law or regulation with which the [federal act] conflicts and therefore preempts.").

20

After identifying the federal-state conflict in question, a plaintiff may establish preemption in several ways, including by demonstrating that "compliance with both federal and state law regulations is a physical impossibility, or [that] state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Springfield Hosp.*, 2010 WL 3322716, at *14 (citing *PG & E Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 204 (1983) (citations and quotation marks omitted)).

Here, the Regulation presents no facial conflict with either § 30(A) or §1396a(a)(3) of the Medicaid Act, nor does there appear to be any impossibility with complying with both the Regulation and the Medicaid Act. Instead, Plaintiff's Supremacy Clause arguments are grounded upon its assertion that the Regulation, which is part of a *Medicaid* program, fails to offer the same dispensing schedule authorized by *Medicare Part D* and "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." (Doc. 35 at 5) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)). Plaintiff, however, makes this claim only with regard to Section 30(A). Because neither the Second Amended Complaint nor Plaintiff's post-hearing briefing provide any means of identifying a Supremacy Clause claim under Section 1396a(a)(3) of the Medicaid Act, that claim must be DISMISSED. *See Ross v. Houston Hous. Auth.*, 2010 WL 1741357, at *4 (S.D. Tex. Apr. 29, 2010) ("Plaintiff has no viable Supremacy Clause claim because she does not identify any conflict between state and federal law . . . and, therefore, identifies no state or local law that would be preempted by federal law under the Supremacy Clause.").

With regard to Plaintiff's Section 30(A) Supremacy Clause claim, although Defendants forcefully and perhaps persuasively argue that federal approval of the Regulation undercuts any argument that the Regulation obstructs the purposes and objectives of Congress,[5] they have not established that, at the pleading stage, Plaintiff has

---

[5] The Secretary of the Department of Health & Human Services must ensure that State Plans comply with federal requirements, *see* 42 U.S.C. §§ 1396-1, 1396a, and the Secretary's approval

failed to adequately plead a Supremacy Clause claim. *See Conn. Ass'n of Health Care Facilities, Inc. v. Rell*, 2010 WL 2232693, at *7 (D. Conn. June 3, 2010), *affirmed, Conn. Ass'n of Health Care Facilities, Inc. v. Rell*, 2010 WL 3894794 (2d Cir. Oct. 6, 2010).

Because Plaintiff has adequately pled a preemption claim based upon an alleged conflict between the Regulation and Section 30(A) of the Medicaid Act, Defendants' Rule 12(b)(6) motion with regard to that claim must be DENIED. Whether Plaintiff's claim is ultimately *persuasive* is beyond the scope of the court's analysis at this nascent stage of the proceedings. *See Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 65 (2d Cir. 2010) ("We are mindful that a motion to dismiss does not involve consideration of whether 'a plaintiff will ultimately prevail' on the merits, but instead solely 'whether the claimant is entitled to offer evidence' in support of his claims.") (citation omitted).

### E. Plaintiff's Motion for Leave to Amend the Second Amended Complaint.

Plaintiff requests leave to amend its Second Amended Complaint in the event the court identifies any deficiencies in Plaintiff's claims, especially if those deficiencies relate to the plausibility of Plaintiff's allegations. As no deficiencies were identified at the time of Plaintiff's preemptive motion, Plaintiff has not submitted a proposed Third Amended Complaint. Neither the Federal Rules of Civil Procedure nor this court's Local Rules authorize an amended complaint on a hypothetical basis. Accordingly, although the court does not foreclose the possibility of further amendment to Plaintiff's complaint, nor does it dismiss any claim with prejudice, it declines to grant leave to amend until such time as the proposed amendments are before this court.

### F. Defendants' Motion for *Younger* Abstention.

Defendants ask the court to abstain from adjudicating any of Plaintiff's remaining claims in federal court, in deference to the state civil enforcement action. Generally,

---

of a State plan is subject to review under the highly-deferential *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984) framework. *See* 5 U.S.C. § 706(2)(A) (providing that agency actions may be set aside if its conclusions are found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]").

federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given [them]." *Royal & Sun Alliance Ins. Co. of Canada v. Century Int'l Arms, Inc.*, 466 F.3d 88, 92 (2d Cir. 2006) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). *Younger v. Harris*, 401 U.S. 37 (1971) and its progeny "delineate an exception to this rule, requiring federal courts to abstain where appropriate to 'allow state courts to resolve pending matters within their jurisdiction.'" *Arbitron Inc. v. Cuomo*, 2008 WL 4735227, at *3 (S.D.N.Y. Oct. 27, 2008) (quoting *Washington v. Cnty. of Rockland*, 373 F.3d 310, 318 (2d Cir. 2004)). "This principle of abstention is grounded in interrelated principles of comity and federalism." *Spargo v. N.Y. State Comm'n on Judicial Conduct*, 351 F.3d 65, 74 (2d Cir. 2003).

"Although the holding in *Younger* itself was limited to state criminal trials, it has subsequently been extended to cover certain civil proceedings," *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 100 (2d Cir. 2004), including state civil enforcement proceedings. *See Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975). Cases that involve federal statutory claims, as well as constitutional claims, qualify for *Younger* abstention. *See Kirschner v. Klemons*, 225 F.3d 227, 233 (2d Cir. 2000) (observing that *Younger* abstention was proper unless "'state law clearly bars the interposition of the constitutional [or federal] claims.'" (citation omitted)). In addition, "[t]he *Younger* doctrine is as applicable to suits for declaratory relief as it is to those for injunctive relief. . . ." *Id.* at 235. "*Younger* abstention is mandatory when: (1) there is a pending state proceeding, (2) that implicates an important state interest, and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of his or her federal constitutional claims." *Spargo*, 351 F.3d at 75.

Here, it is undisputed that the state civil enforcement action is a pending state proceeding. In the context of *Younger* abstention, a state interest is "important" where "the state action concerns the central sovereign functions of state government." *Grieve v. Tamerin*, 269 F.3d 149, 152 (2d Cir. 2001) (quotation marks and citation omitted). The State of Vermont's interest in the proper administration of its Medicaid program is

23

sufficiently "important" to warrant *Younger* abstention. *See Trainor v. Hernandez*, 431 U.S. 434, 444 (1977) (holding that *Younger* principles were "broad enough to apply to interference by a federal court with an ongoing civil enforcement action such as this, brought by the State in its sovereign capacity."). The first two tests for mandatory *Younger* abstention have thus been satisfied.

As for the third prong of the *Younger* test, the court concludes that the state civil enforcement action affords Plaintiff an adequate opportunity for judicial review of its remaining constitutional and federal statutory claims for at least two reasons. First, the Vermont Superior Court, where the civil enforcement action is pending, is a court of general civil jurisdiction that is competent to adjudicate Plaintiff's remaining federal claims. Second, Plaintiff's few remaining claims in this lawsuit are either state law claims, defenses to the civil enforcement action, or directly impact the State of Vermont's interests. State court, rather than federal court, is the most appropriate venue for the adjudication of those claims. *See Spargo*, 351 F.3d at 74 (*Younger* is not a "jurisdictional bar based on Article III requirements, but instead a prudential limitation on the court's exercise of jurisdiction grounded in equitable considerations of comity.").

The court therefore GRANTS Defendants' motion for *Younger* abstention and DISMISSES Plaintiff's remaining claims on that basis. *See Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 197 (2d Cir. 2002) ("when *Younger* applies, abstention is mandatory and its application deprives the federal court of jurisdiction in the matter.").[6]

## CONCLUSION

For the reasons stated above, the court GRANTS Defendants' motion to dismiss Counts I-III. The court also GRANTS Defendants' motion to dismiss all claims set forth in Count IV, except Plaintiff's Supremacy Clause claim under Section 30(A). The court hereby DENIES WITHOUT PREJUDICE Plaintiff's motion for leave to amend the

---

[6] Because the court has decided to dismiss the remaining claims on *Younger* abstention grounds, Defendants' sovereign immunity defenses based upon the Eleventh Amendment are moot.

Second Amended Complaint.  The court abstains from adjudicating any of Plaintiff's remaining claims under *Younger* and its progeny and therefore DISMISSES this action. SO ORDERED.

Dated at Burlington, in the District of Vermont, this _5_ day of January, 2011.

Christina Reiss, Chief Judge
United States District Court